## IN THE MATTER OF BIAGIO J. PERRELLO.

[No. 872S113. Filed May 1, 1973.]

*Biagio J. Perrello,* of Indianapolis, pro se, for respondent.

*John B. Ramming,* of Indianapolis, *David W. Mernitz,* of Indianapolis, for Indiana Supreme Court Disciplinary Commission.

ARTERBURN, C.J.—This proceeding was instituted by a Verified Complaint for Disciplinary Action filed by the Disciplinary Commission of this Court. It was heard before the Honorable Jack A. King as a Hearing Officer. After the hearing the following Findings and Recommendations of Hearing Officer were filed:

### FINDINGS OF FACT

1. The Respondent is an attorney heretofore admitted to the practice of law. [Disciplinary Commission Exhibits 1 and 2].

2. The Respondent has been duly notified, as required by A.D. Rule 23, §§ 10, 11, 12, and 14, with respect to each

grievance or complaint upon which any specific finding of fact, conclusion, or recommendation is herein made. [Disciplinary Commission Exhibits 5 and 6; December 21, 1972, Transcript, pages 32-38.]

3. On January 10, 1972, the Respondent, Biagio J. Perrello, approached Miss Bonnie Halsey in the corridor of the City-County Building of Marion County adjacent to Municipal Courtroom Nine. Miss Halsey did not know the Respondent before he approached her and identified himself as an attorney. Mr. Perrello spoke first, and upon discovering that Miss Halsey was scheduled to appear in Court that day, he offered to represent her for a retainer of $100.00 and a total fee of $600.00. Mr. Perrello further stated to Miss Halsey that for an additional sum of $10.00 he could get her case "fixed." Miss Halsey, prior to such conversation, had not sought the Respondent's services as an attorney. [November 14 Transcript, pages 18-21, 23.]

4. On April 11, 1972, the Respondent approached Mr. Charles Christian in the corridor of the City-County Building of Marion County adjacent to Municipal Courtroom Five. The Respondent asked Mr. Christian if he was required to appear in Court, and upon obtaining an affirmative answer, told Mr. Christian that he needed a "counselor" to accompany him. The Respondent thereupon gave Mr. Christian his business card and quoted a $50.00 retainer. Mr. Christian had not sought the Respondent's services as an attorney prior to this conversation. [November 14 Transcript pages 31-32.]

5. During the month of January, 1972, Mrs. Betty Lou Barnes was standing in the corridor adjacent to Municipal Courtroom Ten in the City-County Building of Marion County. At that time Mrs. Barnes' son, Jeff, was in jail, and scheduled to appear in Court for the first time on the day in question. The Respondent approached Mrs. Barnes, and asked her what she was crying about. Mrs. Barnes responded that her son was in jail and asked the Respondent if he was a lawyer. Answering affirmatively the Respondent told Mrs.

Barnes that if her son did not have a lawyer, the Judge would "throw the book at him." Thereupon Mrs. Barnes retained the Respondent and paid him $23.00 toward a total $50.00 retainer fee. Prior to this conversation Mrs. Barnes did not ask the Respondent for his advice as to whether she should obtain counsel and Mr. Perrello accepted employment as a result of his unsolicited advice that Mrs. Barnes' son should have an attorney to represent him. [November 14 Transcript pages 51-57.]

6. On February 16, 1972, the Respondent approached Mrs. Asunda A. Bruce, who was standing in the corridor of the City-County Building of Marion County adjacent to Municipal Courtroom Ten. Mrs. Bruce's husband was in jail in connection with a rape charge, and was due in Court for the first time that day. Mr. Perrello approached Mrs. Bruce, and while standing next to her he stated that he was a lawyer. The Respondent emphasized that Mrs. Bruce's husband should have a lawyer. As a result of this advice Mrs. Bruce retained the Respondent and paid him a $50.00 fee. Prior to this conversation she had not sought the Respondent's advice as to whether she should obtain counsel for her husband, and the Respondent accepted employment as a result of his unsolicited advice. [November 14 Transcript pages 60-63.]

7. On April 18, 1972, Mrs. Betty Mosley was in the corridor adjacent to Municipal Courtroom Ten of the City-County Building of Marion County in connection with a criminal charge then pending against her son, who was in jail. Prior to going to the City-County Building Mrs. Mosley had contacted Mr. John C. Christ with reference to her son's problem. She did not know Mr. Christ, and while awaiting his arrival in the corridor, the Respondent, Biagio J. Perrello, approached Mrs. Mosley and asked her if she was having a problem. Mrs. Mosley inquired as to whether the Respondent knew Mr. Christ, to which the Respondent gave a negative reply. Mr. Perrello told Mrs. Mosley that he was a lawyer and bail bondsman, and that he would represent her son. The

Respondent did in fact appear for Mrs. Mosley's son that date, but was later discharged from employment because he had not kept his promise to go to the jail and confer with his client, and failed to communicate with Mrs. Mosley regarding her son's problem. Mr. Perrello told Mrs. Mosley if she paid him $500.00 he would get her son out of jail. Mrs. Mosley had not asked the Respondent for his advice as to whether she should obtain counsel for her son prior to this meeting, and Mr. Perrello accepted employment as a result of the advice and representation made by him to Mrs. Mosley. [November 14 Transcript pages 66-73.]

8. From December 15, 1971, through November 13, 1972, thirty-three separate complaints regarding the alleged activities and conduct of the Respondent, Biagio J. Perrello, in the unethical solicitation of legal business in the public corridor immediately adjacent to the Municipal Courts of Marion County, were referred to and investigated by the Honorable D. William Cramer, Presiding Judge of the Municipal Court of Marion County. The Respondent has made it a custom to station himself daily either near the elevators or near the main bulletin board in the Municipal Court corridor well in advance of the time that each Court is scheduled to convene. Mr. Perrello has made it the practice to recommend employment of himself to non-lawyers who have not sought his advice regarding his employment as a lawyer; of giving unsolicited advice to laymen that they should obtain counsel; and of accepting employment resulting from that advice. [November 14 Transcript pages 101-104.]

9. At approximate six week intervals since January 1, 1972, Judge Cramer has confronted Mr. Perrello with the charge that he has actively solicited legal business in the public corridors of the City-County Building of Marion County in violation of the Canons of Ethics. While Mr. Perrello denies these charges, Judge Cramer has personally observed him in the public corridors and has overheard the Respondent advise laymen that they are in need of legal

counsel. [November 14 Transcript pages 104-111; December 21 Transcript pages 40 and 41.]

10. During the calendar year 1971, approximately 222,000 criminal charges affecting nearly 180,000 people were processed in the traffic, misdemeanor and felony divisions of the Municipal Court of Marion County. [November 14 Transcript page 105.]

11. It is not uncommon for laymen to go to the City-County Building of Marion County in connection with minor criminal charges without first having retained an attorney, knowing that they may arrange for legal representation "on the spot." [December 21 Transcript page 113, questions 28-30.]

12. It is not unique for attorneys to obtain clients in the public corridors outside the Municipal Courtrooms in the City-County Building of Marion County. It is not accepted practice, however, to permit attorneys to engage in unethical solicitation activities in public areas adjacent to the Municipal Court. [November 14 Transcript pages 108-115.]

13. Attorneys who practice regularly in the Municipal Courts of Marion County are commonly found in hallways, courtrooms and other public areas adjacent to the Municipal Courtrooms, where they may have to wait an appreciable time before the cases in which they are appearing are called for hearing. [December 21 Transcript page 168, questions 18-19; page 172, question 37; pages 210-212; pages 274-275.]

14. While attorneys are customarily in the public corridors of the City-County Building of Marion County adjacent to the Municipal Courtrooms, it is not common practice for them actively to solicit business in violation of the Canons of Ethics. [December 21 Transcript page 160, question 18; page 160, question 22; page 161; page 166; page 172, question 34.]

15. The Respondent is prone to approach total strangers and initiate conversations with them. [December 21 Transcript pages 325-326; page 331.]

16. The Respondent, Biagio J. Perrello, has engaged actively in the solicitation of clients. [November 14 Transcript, testimony of Miss Bonnie Halsey pages 18-23; November 14 Transcript, testimony of Mr. Charles Christian pages 31-32; November 14 Transcript, testimony of Mrs. Betty Lou Barnes pages 51-57; November 14 Transcript, testimony of Mrs. Asunda H. Bruce pages 60-63; November 14 Transcript, testimony of Mrs. Betty Mosley pages 66-73; November 14 Transcript, testimony of the Honorable D. William Cramer pages 101-104; December 21 Transcript pages 40-41.]

17. The Respondent has, on occasion, given legal advice to clients in the presence of other persons who have no direct interest in the matter under consideration or right to overhear a conversation between attorney and client. [December 21 Transcript page 181, question 46; page 186, questions 80-82.]

18. Mr. Perrello has engaged in the practice of advising laymen who were not his clients that they were in need of legal counsel. [December 21 Transcript page 184, questions 63-65; See finding of fact 16 *supra,* and transcript references therein contained.]

19. The Respondent and his wife each come from families of moderate means, and it has been difficult for Mr. Perrello to establish himself in the practice of law. [December 21 Transcript pages 147-149; pages 334-353.]

## Conclusions

The controversy surrounding Mr. Perrello has been evident in these proceedings for many months. It is safe to estimate that there is no other disciplinary matter now pending before the Supreme Court of Indiana that has received equivalent

public comment. This is due in great measure to the fact that the Respondent suffers from a rather severe complex that everyone is against him. The result is that he often finds it difficult to adjust his behavior and conduct to the situation with which he is confronted. [See December 21 Transcript, pages 203-204; page 207, question 30; pages 246-247; page 331; pages 341-342.] All of the cited statements in the transcript were made by Mr. Perrello's witnesses, and while no disciplinary action is being sought, or would be warranted, for Mr. Perrello's feelings about his relationship with the public in general and members of the bench and bar in particular, comments of the type that have been volunteered by his own witnesses help to explain the behavior of the Respondent. It must be noted, however, that the Respondent's reaction to the complaint against him is not attributable alone to any given personality trait or complex. It is difficult to conclude with logic and reason that pure coincidence operates to explain the fact that by far the great majority of complaints against Mr. Perrello have emanated from the same source.

The evidence suggests probable cause to believe that a small group of Indianapolis attorneys who regularly practice in the Municipal Courts of Marion County seek to eliminate Mr. Perrello as a competitor, when they are no less guilty of professional misconduct than the Respondent. [See December 21 Transcript, pages 23-27; page 72; page 90; pages 101-102; pages 113-114; pages 117- 118; pages 177-179; page 313; page 318.] The only issue before the Court is whether the conduct of the Respondent warrants disciplinary action, and while no blanket indictment of other attorneys is intended, the Disciplinary Commission of the Supreme Court of Indiana and the Indianapolis Bar Association should each stand ready to eliminate all unethical practices that they find prevalent among those attorneys whose practices thrive from the representation of clients in the several divisions of the Municipal Court of Marion County.

The evidence discloses that thousands of cases are tried

each year in the Municipal Court of Marion County. There are undoubtedly attorneys who rely on the fact that each day they will be able to find new clients in the public corridors adjacent to the courtrooms, just as Mr. Perrello has done. If the high standards of our profession are to be preserved, all unethical solicitation activities must be terminated, and conjestion of our courts cannot serve as justification for any abdication of our ethical responsibilities.

The Respondent's defense that he is entitled to more latitude in the manner by which he established himself in the practice of law by virtue of his family background and moderate financial position is without justification. Likewise, his assertion that he is not guilty of misconduct because others have done the same things, for which they have not been disciplined, in no way mitigates the charges that have been brought against Mr. Perrello.

The Respondent has introduced a substantial volume of testimony to the effect that he has not been seen soliciting. This testimony is directly refuted by witnesses who have either observed or experienced the Respondent's solicitation activities. In addition, even if it is assumed that certain witnesses have not seen the Respondent solicit, that in no way establishes that he has not done so in the presence of others; and his defense that he has not solicited directly contradicts his position that he has adopted and pursued the same practices of other attorneys who have not been sanctioned for their unethical solicitation. [See December 21 Transcript, page 111.]

To conclude that Mr. Perrello has not unethically solicited business would require the Court totally to ignore the evidence brought forward by the Disciplinary Commission, and for that matter, some of the evidence volunteered by the Respondent's witnesses. The Respondent's testimony in denial of the charges against him lacks credibility when weighed against the statement of impartial bystanders who stand no opportunity for gain or loss by the result of these proceedings.

The Hearing Officer concludes from the evidence that the Respondent, Biagio J. Perrello, is guilty of professional misconduct in violation of Disciplinary Rule 2-103(A), Disciplinary Rule 2-104(A)(1), and Disciplinary Rule 1-102(A)(1), (4), and (6). The parties are in agreement, however, that the principal issue to be resolved is whether the Respondent has unethically solicited clients, and if so, the sanction to be imposed for that activity.

Having determined that the Respondent has unethically sought out prospective clients and that he has accepted employment as a result of his unsolicited advice that they were in need of an attorney, it becomes incumbent upon the Hearing Officer to recommend a sanction to be imposed. The Disciplinary Commission has contended that disbarment is the only appropriate remedy. While unethical solicitation is not to be condoned or encouraged, it is not the most serious breach of ethics of which an attorney may be found guilty. There are many more serious offenses that adversely affect the confidence of the public in the legal profession. Accordingly, the Hearing Officer is unable to accept the disbarment proposal of the Disciplinary Commission. However, from the very inception of these proceedings the Respondent has not been deterred from his established course of conduct. He has continued to solicit clients, and has been preoccupied with an attempt to establish his innocence by proving that others are guilty. He has given no serious consideration to his responsibilities to a noble profession, whose high standards must be maintained if our system of justice is to survive. Thus, the sanction to be imposed must be of such persuasion and influence that he, and all other attorneys who engage in similar practices, will be convinced beyond any doubt that the practice of law must be conducted entirely within the letter and the spirit of the Canons of Ethics and the Disciplinary Rules.

## RECOMMENDATION

The Hearing Officer respectfully recommends that Biagio J. Perrello be suspended from the practice of law for a period of two (2) years, and that he be given credit against said suspension for the time during which he has been suspended pending the determination of this cause on its merits.

The Clerk of this Supreme Court is directed to impound the Findings and Recommendation herein made, and the Clerk, Disciplinary Commission and Respondent are each hereby directed to refrain from divulging the contents or substance hereof pending the final determination of this cause on its merits by the Supreme Court of Indiana.

Entered February 23, 1973.

Jack A. King
Hearing Officer

And the Court having examined said report and also the Respondent's Petition For Review of the Findings and Recommendations of Hearing Officer, and the Court being duly advised in the premises, now unanimously approves the Findings of the said Hearing Officer, and DeBruler, Givan, Prentice, JJ., being a majority of the court, approve the Recommendation of said Officer, and the said Respondent, Biagio J. Perrello, is now suspended as a member of the bar of this state and from the practice of law for a period of two (2) years, and that he is given credit against said suspension for the time during which he has been suspended pending the determination of this cause on its merits. Arterburn, C.J. and Hunter, J., do not approve of said Recommendation, feeling that the Respondent, Biagio J. Perrello, should be permanently disbarred.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED in accordance with the majority view of this Court that Biagio J. Perrello be suspended as a member of the bar of this state and from the practice of law for a period of

two (2) years and that he be given credit against said suspension for the time during which he has been suspended pending the determination of this cause on its merits. The costs of this proceeding are taxed against said Respondent.

Dated this 1st day of May, 1973.

Norman F. Arterburn
Chief Justice of Indiana

NOTE.—Reported in 295 N. E. 2d 357.