**In the Matter of Biagio J. PERRELLO.**

**No. 678S105.**

Supreme Court of Indiana.

Sept. 12, 1979.

Wilcox & Ogden, Indianapolis, for appellant.

Sheldon A. Breskow, Indianapolis, for appellee.

PER CURIAM.

This proceeding is before the Court on a two-count verified complaint filed by the Indiana Supreme Court Disciplinary Commission pursuant to Admission and Discipline Rule 23, § 12. This cause was heard by a Hearing Officer who has filed his findings of fact and conclusions of law in accordance with Admission and Discipline Rule 23. The Respondent has petitioned this Court to review.

The first count of the complaint filed in this cause charges Respondent with repeatedly violating Disciplinary Rule 2–103(A) and 2–104(A) by soliciting clients and giving unsolicited advice to laymen to obtain counsel, by recommending himself as counsel, and by accepting employment of the solicited clients.

Under the second count of the complaint filed in this cause, the Respondent is charged with violating Disciplinary Rules 1–102(A)(4) and (6) by misrepresenting and deceiving the Hearing Officer and this Court in a prior reinstatement proceeding.

In his petition for review, the Respondent seeks the setting aside of the findings and conclusions entered by the Hearing Officer and prays for the adoption of the Respondent's proposed findings which set forth his assessment of the factual and legal issues presented to the Hearing Officer. Thus, the petition raises questions of fact which are to be resolved by the review process employed by this Court in disciplinary proceedings. As we have previously stated, our review involves the examination of all matters submitted to establish the facts upon which a determination of misconduct is weighed. *In re Craven* (1979), Ind., 390 N.E.2d 163; *In re Murray* (1977), 266 Ind. 221, 362 N.E.2d 128, appeal dismissed, 434 U.S. 1029, 98 S.Ct. 758, 54 L.Ed.2d 777 (1978); *In re Pawlowski* (1959), 240 Ind. 412, 165 N.E.2d 595.

This Court, having examined the matters submitted in this cause, accordingly now finds that the Respondent has engaged in a general course of conduct of approaching individuals in the hallways of the Marion County Municipal Courts, offering them unsolicited legal advice, and offering his services as a private attorney. This course of conduct included personally soliciting Dennis Weiss on or about August 4, 1977; William Barker on or about December 7, 1977; Michael Elkins on or about February 2, 1978; Diana Barley during April, 1978, and Jerry D. Tarver on or about March 13, 1978. In each instance the Respondent, without invitation, approached these individuals, whom he did not know, in the hallways of

the Marion County Municipal Courts, offered them legal advice, suggested that they needed an attorney and stated that for a sum certain he would provide representation in court. In the cases of William Barker, Michael Elkins, Diana Barley, and Jerry D. Tarver, the Respondent accepted employment resulting from his advice that they should obtain counsel and take legal action. Dennis Weiss did not employ the Respondent.

The specific acts of solicitation relative to the above noted individuals were as follows:

On or about August 4, 1977, the Respondent approached Dennis Weiss in the corridor of the City-County Building of Marion County adjacent to Municipal Courtroom five. Weiss did not know the Respondent before he approached him. Respondent spoke first, and upon discovering that Weiss was scheduled to appear in Court that day for a traffic ticket, he offered to represent him for a fee of $75.00. Respondent advised Weiss that he could keep him from having to pay a fine and receiving points against his license because of a constitutional technicality. Weiss declined to employ Respondent, informing him that he had been in court before for a traffic ticket and his fine and cost was only $35.00. To this Respondent responded that that was night court, this is day court and day court costs more. Respondent also advised Weiss that his fine would be at least $75.00. Weiss again declined to employ Perrello. Weiss, prior to such conversation, had not sought Respondent's advice or services as an attorney. Following his conversation with Perrello, Weiss appeared in Municipal Court 5, plead guilty and received a $35.00 fine.

On or about December 7, 1977, the Respondent approached William Barker on the first floor of the City-County Building of Marion County. Respondent spoke first, and upon discovering that Barker was to appear in Court that night at 6:00 p. m. on two traffic tickets, he offered to represent him and "take care of" his tickets. Respondent told Barker to be in

Respondent's office at 5:30 p. m. on December 7, 1977, and to bring $100.00. Barker went to Respondent's office at 5:30 p. m. that evening and paid him $100.00. Barker did not go to Court that evening; instead Respondent advised him that everything was taken care of and that he could go home.

In January, 1978, Barker received notice that a warrant had been issued for his arrest arising out of his failure to appear in Court on December 7, 1977 at 6:00 p. m.

Barker immediately tried to contact Respondent by phone but was unable to reach him. Barker went to Respondent's office, showed him the notice he had received and asked him what it meant. Respondent informed Barker that for $100.00 more he would take care of it. Barker did not pay any more money. Barker and the Respondent went to the City County Building and parted company for a while. When Respondent returned, he told Barker he had talked with the Judge, everything was taken care of and he could go home. Barker did go home, but on February 22, 1978, the police came to Barker's home to arrest him for failing to surrender himself after receiving notice to do so in January.

Barker was not at home when the police came to arrest him. Upon his return his wife informed him of the above visit. Barker immediately went to the City County Building to surrender himself. He spoke with a Mr. Davis in Room 643 at the City County Building, who informed him that his two tickets were still outstanding. Mr. Davis scheduled Barker for a court appearance that evening at 4:30 p. m. As Barker left Room 643, he saw Respondent who inquired why he was there. Barker replied, for the two tickets. Barker stated that he was to appear in Court at 4:30 that evening and Respondent said he would meet him there. When Barker arrived at Court, Respondent was there. Perrello kept Barker outside of the Court room until after 4:30 p. m. When Barker went into the Courtroom, his wife informed him

that the Judge had called his name 3 times. Perrello told Barker not to worry because the Judge would call his name again. The Judge did not call Barker's name again but continued his case until a later date. Barker's two traffic tickets were disposed of at a later date without the aid or services of Respondent.

On or about February 2, 1978, the Respondent approached Michael Elkins in the hallways of the Marion County Municipal Courts. Perrello spoke first and asked Elkins what he was charged with. Elkins responded OMVUIL and speeding. Respondent told Elkins that was a serious charge and he should get a lawyer. Perrello identified himself as a lawyer and told Elkins to come up to his office. Elkins did go to Perrello's office on February 2, 1978. Respondent told Elkins he would represent him for a fee of $500.00. Elkins told Respondent he could not afford to pay $500.00. Respondent then told Elkins what the maximum sentence and fine was for OMVUIL. He further guaranteed that if Elkins hired Respondent he would receive no jail time or fine. Elkins still declined to hire the Respondent.

The next time Elkins was to appear in court he was again approached by the Respondent, who warned Elkins not to go into Court without an attorney and asked him how much money he had with him. Elkins responded $100.00. Respondent said, "I'll take that." Respondent then pulled a sheet of paper out of his pocket and asked both Michael Elkins and his mother, Helena Elkins, who was with her son at the time, to sign it. The paper had some preprinted words on it and spaces which were blank. Neither Michael nor Helena read the document but both signed it. Perrello then went into court and got Michael's case continued. When Respondent returned he told Michael and Helena he continued the case so that they would have time to pay him the $400.00 balance of his fee.

When Michael and Helena Elkins told Respondent they could not afford to pay

him $400.00, he told them for the first time that the paper they signed was a promissory note for the balance of his fee. He did not give the Elkins' a copy of the note and the Elkins have never seen a copy.

Prior to Michael's next court appearance, Respondent called him and asked him for the $400.00. Michael responded he did not have it and asked Respondent to withdraw from the case. Respondent replied, "If I don't get my money you'll do jail time."

On April 4, 1978, Helena Elkins paid Perrello the $400.00. She did not receive a copy of the cancelled note.

On May 9, 1978, Michael Elkins appeared in Municipal Courtroom 5 with Perrello; a plea bargain was entered into; Elkins plead guilty to reckless driving and speeding and received 6 months probation, a $132.00 fine and was required to go to traffic school.

During April, 1978, Respondent approached Gene and Diana Barley in the hallway of the Marion County Municipal Courts. Diana Barley's brother, Rex Hensley, was in jail and was scheduled to appear in Court on the day in question. Neither Gene nor Diana Barley knew Respondent before he approached them. Respondent spoke first and asked them why they were in Court. Gene Barley told Respondent the Court was going to set bail for Diana's brother Rex and they were there to secure a bondsman. Respondent asked if Rex had a lawyer. When Gene responded that he did not, Respondent identified himself as a lawyer and told them he would represent Rex, promising to get him released on his own recognizance for $100.00. The Barleys wrote Respondent a check for $100.00 and Respondent went into Court with Rex. Rex Hensley was not released on his own recognizance and bond was set at $1000.00. The Barleys subsequently stopped payment on the $100.00 check.

On or about March 13, 1978, Respondent approached Jerry D. Tarver in the hallways of the Marion County Municipal Court. Tarver did not know Respondent before being approached. Respondent spoke first, and upon discovering that Tarver was scheduled to appear in Court that day for the charge of OMVUIL, offered to represent him for a retainer of $100.00 and a total fee of $600.00. Tarver, who was scared and upset because this was not his first offense, agreed to employ Respondent and paid him $100.00. Tarver retained Respondent only after Respondent represented to him and promised him that he would not receive any jail time. Tarver, prior to such conversation, had not sought the Respondent's services as an attorney.

The foregoing findings of fact clearly establish that the Respondent deliberately solicited clients who happen to find themselves in extremely vulnerable situations. The Respondent's acts further establish a mode of conduct fraught with misrepresentation and overreaching.

During the course of these proceedings, the Respondent has argued that the provisions of the Code of Professional Responsibility, under which he is charged in Count I of the verified complaint filed in this cause, are repugnant to the First Amendment to the Constitution of the United States and suffer from overbreadth as they infringe upon speech that is constitutionally protected. He has further asserted that such provisions are violative of Respondent's right to due process as guaranteed by the Fourteenth Amendment to the Constitution of the United States and by Article I, Section 12, of the Constitution of the State of Indiana, arguing that the provisions of the Code of Professional Responsibility are vague because they fail to set a clear line of demarcation between permitted and proscribed speech.

We find Respondent's assertions, in the context of the facts now before this Court, meritless. Guarding against the unscrupulous solicitation of unsuspecting laymen is not an infringement on the First Amendment. These rules protect and serve legitimate public interests by penalizing undue influence, overreaching and misrepre-

sentations. The rules cannot be viewed as overbroad or vague. The Hearing Officer in this case found that these rules are commonly understood by reasonable men and particularly by attorneys; we concur in this finding.

In accordance with the foregoing, we find that Respondent, by giving unsolicited advice to laymen to obtain counsel, by recommending himself as an attorney for such persons, and by accepting employment resulting therefrom violated Disciplinary Rules 2–103(A) and 2–104(A) of the Code of Professional Responsibility for Attorneys at Law.

Relative to the charges under Count II of the verified complaint, we now find that on or about May 1, 1973, the Indiana Supreme Court, in an opinion entitled *In Re Perrello* (1973), 260 Ind. 254, 295 N.E.2d 357, written by then Chief Justice Norman Arterburn, found the Respondent, Biagio J. Perrello, was guilty of professional misconduct. The Court, by adopting the Hearing Officer's findings, stated:

"14. While attorneys are customarily in the public corridors of the City-County Building of Marion County adjacent to the Municipal Courtrooms, it is not common practice for them actively to solicit business in violation of the Canons of Ethics.

"15. The Respondent is prone to approach total strangers and initiate conversations with them. 260 Ind. 258, 295 N.E.2d 359.

"18. Mr. Perrello has engaged in the practice of advising laymen who were not his clients that they were in need of legal counsel." 260 Ind. 259, 295 N.E.2d 359.

From the above facts, the Court concluded the following:

"To conclude that Mr. Perrello has not unethically solicited business would require the Court totally to ignore the evidence brought forward by the Disciplinary Commission, and for that matter, some of the evidence volunteered by the Respondent's witnesses. The Respondent's testimony in denial of the charges against him lacks credibility when weighed against the statement of impartial bystanders who stand no opportunity for gain or loss by the result of these proceedings.

"The Hearing Officer concludes from the evidence that the Respondent, Biagio J. Perrello, is guilty of professional misconduct in violation of Disciplinary Rule 2–103(A), Disciplinary Rule 2–104(A)(1), and Disciplinary Rule 1–102(A)(1), (4), and (6)." 260 Ind. 261, 295 N.E.2d 361. The Court, having found the above misconduct, suspended the Respondent from the practice of law for a period of not less than two (2) years.

On or about November 18, 1976, a hearing was held on the second petition for Reinstatement filed by the Respondent. At said hearing the Respondent testified at length regarding the conduct for which he was disciplined as set out above in paragraph one. He repeatedly stated, under oath, that such conduct was contrary to the *Code of Professional Responsibility for Attorneys at Law,* injurious to the public and bar, and that he would never engage in such conduct if reinstated to the practice of law. This testimony led the Hearing Officer to conclude:

"Petitioner testified in this case at some length. He recounted his experience in the practice from the time he was admitted in 1970 to the present. He feels that he got a wrong impression about the seriousness with which lawyers took the Canon forbidding the solicitation of business. He was advised by other lawyers to hang around courts to try to get business. These experiences caused him to feel that this was the way the system worked. He has been a court clerk and a Deputy Prosecutor, and in private practice he was involved in over two hundred (200) cases in Municipal and Criminal Courts. Petitioner admitted that at first he did not feel he should have been penalized, because the practice of soliciting was widespread. He has come to realize that the Canons of Ethics are a necessary and desirable thing for the profession, and that the welfare of the public and the

profession require that they be strictly enforced.

"He is not hostile or resentful about his punishment but is remorseful."

On or about March 3, 1977, based in large part upon the above finding, the Indiana Supreme Court Disciplinary Commission recommended the Respondent's reinstatement to the practice of law.

On or about March 16, 1977, the Respondent was reinstated to the practice of law by order of the Indiana Supreme Court.

The Respondent has, since the time of his reinstatement, engaged in the same course of conduct as that for which he originally was disciplined.

The Respondent, by stating to the Hearing Officer of the Indiana Supreme Court Disciplinary Commission that he would not attempt to solicit business in the future and was truly remorseful for having done so in the past, attempted to and did deceive said Hearing Officer and the Indiana Supreme Court. Said misrepresentation was designed to gain readmission to the practice of law. In so doing, the Respondent engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation. Such conduct reflects adversely upon his fitness to practice law and is violative of Disciplinary Rules 1–102(A)(4) and (6), of the Code of Professional Responsibility for Attorneys at Law.

■ Having found misconduct, we must now consider the appropriate disciplinary sanction. The Respondent in this cause has exhibited an amazingly stubborn adherence to a course of conduct which is prohibited by clear and precise rules. He flagrantly disregarded all professional ethics in his constant striving for more clients and income. In view of Respondent's previous suspension from the practice of law for essentially the same type of misconduct, no sanction short of disbarment can effectively work to protect the unsuspecting public from such highly unethical behavior.

Therefore, by reason of the violations of the Code of Professional Responsibility found under the complaint filed in this cause, it is now ordered that the Respondent be, and he hereby is, disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the Respondent.