IN THE MATTER OF JOHN JOSEPH MURRAY.

[No. 175S21.  Filed April 26, 1977.]

*Saul I. Ruman,* of Hammond, for respondent.

*David B. Hughes,* of Indianapolis, for Indiana Supreme Court Disciplinary Commission.

PER CURIAM—This is a disciplinary proceeding before this Court on an amended four-count complaint filed by the Disciplinary Commission pursuant to Admission and Discipline Rule 23, Section 12. A hearing on the complaint, filed in this cause, was conducted by a Hearing Officer appointed by this Court, and the Hearing Officer has filed with this Court his

findings of fact and conclusions of law. The respondent now petitions this Court for review of these findings and conclusions, and further petitions for oral argument. Both parties have filed briefs in this matter. This Court now denies the respondent's petition for oral argument.

In his petition for review, the respondent first asserts that he was denied due process of law by the Hearing Officer's refusal to grant several discovery motions prior to the hearing on the merits of this disciplinary proceeding. The record demonstrates that after the complaint was served on the respondent, a motion for the production of documents and interrogatories were filed under this cause. Additionally, the respondent filed his notice to take depositions of various witnesses. In response to these pleadings, the Disciplinary Commission moved to quash the deposition subpoenas. At a pre-trial conference, both parties argued the motion to quash, which the Hearing Officer eventually granted; it was the Hearing Officer's conclusion that Admission and Discipline Rule 23, as then in effect, did not authorize the discovery sought by the respondent.

At the time this matter was presented for consideration to the Hearing Officer, Admission and Discipline Rule 23, Section 14(a) provided that the rules of pleading and practice in civil cases shall not apply and disciplinary proceedings shall be heard on the complaint and answer. No provision of the rule authorized discovery.[1]

The respondent's argument appears to be the assertion of a denial of procedural due process. While the parameters of such right remain undefined, it has been generally held that the right of procedural due process, as applied to the states by the 14th Amendment of the Constitution of the United States, and as applied in this state under Article 1, Section 12, of the Constitution of Indiana, includes notice and an opportunity to be heard. *Mueller* v.

---

1. Admission and Discipline Rule 23, Section 14(b) now authorizes limited discovery by the respondent and Commission.

*Mueller,* (1972) 259 Ind. 366, 287 N.E.2d 886; *State ex rel. Red Dragon Diner* v. *Superior Court of Marion County, etc., et al.,* (1959) 239 Ind. 384, 158 N.E.2d 164; *Neill* v. *Ridner,* (1972), 153 Ind. App. 149, 286 N.E.2d 427.

This due process standard has been applied to proceedings involving the suspension or revocation of the license to practice law, and it has been generally held that such proceedings must provide the respondent attorney with notice of the charges and an opportunity to be heard. *In re Ruffalo,* 390 U.S. 544, 20 L.Ed. 117, 88 S.Ct. 1222, reh. den. 391 U.S. 961, 20 L.Ed. 874, 88 S.Ct. 1833; *In re Stivers,* (1973) 260 Ind. 120, 292 N.E.2d 804.

The respondent does not cite, nor is this Court aware of any authority which expands the requirements of due process to require pre-trial discovery in disciplinary proceedings. Additionally, from an examination of the record of proceedings in this matter, it appears that all witnesses subpoenaed by the respondent were available to testify at the hearing, the respondent was provided with a list of witnesses prior to the hearing, and the respondent was afforded the opportunity to cross-examine the witnesses who were called by the Disciplinary Commission. Accordingly, this Court concludes that the failure to grant discovery prior to the trial on the merits of this cause did not constitute an abridgment of the respondent's right to due process of law.

The respondent next asserts that the complaint filed in this cause enlarged upon the charges which were contained in the grievance initially submitted by the complainants. In particular, the respondent objects to that portion of the complaint alleging undue influence by a third party, arguing that the respondent has not had an opportunity to answer such charges at the administrative level of the disciplinary process.

The complaint filed by the Disciplinary Commission in all disciplinary cases is predicated on the grievance filed, but it would be absurd to hold that the grievance must be strictly construed, and the complaint must be narrowly limited to charges specified in the grievance.

The vast majority of grievances are filed by persons not skilled in the law; the function of the Disciplinary Commission is to review the grievances, dismiss those which are baseless, and then frame a complaint so as to place the alleged misconduct within the structure of the Code of Professional Responsibility.

This procedure was followed by the Disciplinary Commission in this case; and, although the complainants did not specifically allege undue influence, facts were asserted in the grievance which would call the respondent's attention to the case in question. Accordingly, we find that the issue of undue influence was present at the administrative level of the disciplinary process. Also, it appears without question that the constitutional requirement of notice has been met.

Additionally, the respondent, in his petition for review, contends that he was not afforded an opportunity to question the complaining witness with leading questions, as though on cross-examination. The record in this proceeding does not support the respondent's contention. The complaining witness was subpoenaed, but was never called as a witness by either party. This assertion of error is without merit.

The remaining portion of respondent's petition for review challenges the sufficiency of the evidence to support the findings of fact and conclusions of law reached by the Hearing Officer. The parties to this action differ as to the "standard of review" this Court should apply when examining the matters submitted by the Hearing Officer in a disciplinary proceeding. Before this Court can consider the factual issues raised, this question of the appropriate standard of review must be resolved.

It should be noted at the outset that a disciplinary proceeding is an original action in this Court. *Ind. Const.*, Art. 7, § 4. As such, this Court sits as a trial court and must determine issues of fact; this clearly distinguishes the disciplinary proceeding from an appeal. *In re Pawlowski,* (1959) 240 Ind. 412, 165 N.E.2d 595.

Recognizing this distinction, in the absence of any agreement by the parties as to factual issues, this Court examines and reviews all matters which have been submitted in a particular cause. An examination of the previous opinions of this Court demonstrates that the findings of fact are only the initial starting point for review by this Court. See, *In re Wood*, (1976) 265 Ind. 616, 358 N.E.2d 128; *In re Smith*, (1976) 266 Ind. 6, 351 N.E.2d 1; *In re Bradburn*, (1966) 248 Ind. 29, 221 N.E.2d 885; *In re Holovachka*, (1964) 245 Ind. 483, 198 N.E.2d 381. It is through this complete examination of all matters that this Court makes its ultimate findings of fact upon which a determination of misconduct is weighed.

The findings of the Hearing Officer thus are reviewed within this Court's consideration of all relevant matters. These findings do receive emphasis in that the Hearing Officer observes the witnesses, absorbs the nuances of unspoken communication, and by this observation attaches credibility to the testimony, but such findings are not necessarily controlling on this Court and never have been. *In re Pawlowski, supra.*

In the end, the findings of fact reached by this Court are the product of this Court's examination of the entire record with the above noted consideration being given to the findings of fact submitted by the Hearing Officer. Thus, there is no standard of review as applied within appellate procedure, but merely the application of a process of determination whereby this Court finds facts as is required in all original actions.

Under Count I of the complaint, the respondent was charged with creating a knowingly false alibi for a client, who was indicted in a criminal proceeding, and allowing and assisting in the introduction of evidence of this false alibi during the trial of this criminal defendant.

From our examination of all matters which have been filed in this cause and after reviewing the transcript of proceedings, this Court finds that on April 16, 1971, Jerry Laine was indicted by the Starke County Grand Jury for the crime of

theft by assisting one Edward Ronkowski escape from the detection and punishment for the commission of the crime of theft. Laine and Ronkowski came to the respondent and informed the respondent that Edward Ronkowski had, in fact, purchased and received stolen property and that Laine was present at the time of purchase. Edward Ronkowski paid the respondent, who, then, agreed to represent both Laine and Ronkowski in the criminal proceedings; the respondent filed an appearance for Laine and did represent him during his trial in October, 1971.

Prior to the trial of Jerry Laine, Mildred Laine, the defendant's mother, advised the respondent that Jerry Laine worked the day shift on April 1 and 2. Also, prior to the aforementioned trial, the defendant's wife, Mary Laine, met with the Respondent, Edward Ronkowski, and others in the respondent's law office, at which time she told them that she kept a private record of the dates and hours her husband worked, which showed that he had worked the day shift at Ronk's Truck Stop on April 1 and 2, 1971. The respondent, or Edward Ronkowski in the respondent's presence, instructed Mary Laine to discard and forget about her records, as they were going to use other time sheets at the trial in support of Jerry Laine's fabricated alibi that he was not working at Ronk's Truck Stop when Edward Ronkowski purchased the stolen property. Additionally, the respondent took the depositions of Robert Spenner and Timothy Ambers, who had already been convicted, sentenced and incarcerated at the Indiana Youth Center for the burglary wherein they had stolen the property which they thereafter sold to Edward Ronkowski in Ronk's Truck Stop on April 2, 1971. Both testified under oath in said depositions that Jerry Laine was working during the daytime at Ronk's Truck Stop on April 2, 1971, and was present when they sold the stolen property to Edward Ronkowski.

The respondent had a conference with Laine and Ronkowski in his law office before Laine's trial and was shown time sheets for Ronk's Truck Stop which demonstrated that Jerry Laine

worked the day shift on April 2, 1971; at this time, the respondent advised Laine and Ronkowski that these work records would have to be changed. Jerry Laine returned to the Truck Stop and prepared a set of false time sheets evincing that he worked the night rather than the day shift.

At a pre-trial conference in the respondent's law office, at which Edward Ronkowski was present, the respondent asked Mildred Laine, the defendant's mother, to falsely testify in support of the fabricated alibi that Jerry Laine had worked the midnight to 8:00 a.m. shift at Ronk's Truck Stop on April 2, 1971, and then he went directly to her house afterwards to paint the kitchen.

Additionally, prior to Jerry Laine's trial, the respondent filed a notice of alibi, asserting that the defendant was at the home of his mother from 8:30 a.m. to approximately 4:00 p.m. on April 1 and 2, 1971.

At the trial of Jerry Laine, Cause No. 5512, in the Starke County Circuit Court, held on October 26 and 27, 1971, the respondent knowingly, by his questions, guided Jerry Laine, Edward Ronkowski, Mildred Laine, Ellen (Budka) Moorman and Ronald Gaze through their false testimony in support of the fabricated alibi that Jerry Laine was not present at Ronk's Truck Stop on April 2, 1971, at the time Edward Ronkowski purchased the stolen property, thereby perjuring themselves. The respondent elicited testimony at the trial concerning the fabricated work records of Ronk's Truck Stop for April 2, 1971, from Edward Ronkowski in an attempt to corroborate his testimony, knowing of the falsity of such records, and the respondent knowingly elicited perjured testimony at this trial and never made any attempt to reveal the fraud perpetrated upon the Starke County Circuit Court to any affected person or tribunal, or to rectify the fraud.

After the conclusion of this trial, Ellen Moorman was indicted and found guilty of perjury by reason of testimony in the Laine trial, and Ron Gaze pled guilty to perjury at the Laine trial.

In light of our above findings of fact under Count I of the amended complaint filed in this cause, we now conclude that the respondent violated Disciplinary Rules 7-102(A) (2), (3), (4), (5), (6), (7), and (8); 7-102(B) (1) and (2), and 7-109(A) of the Code of Professonal Responsibility for Attorneys at Law.

Under Count II of the amended complaint, the respondent is generally charged with allowing Edward Ronkowski, who paid the respondent to defend Laine, to direct or regulate the respondent's professional judgment in rendering legal services to Laine.

In addition to the findings made under Count I of the amended complaint, which are incorporated in our findings under this Count, we now further find that after Ronkowski and Laine were indicted by the Starke County Grand Jury for theft, both defendants came to the respondent's office and sought representation. Due to Laine's lack of financial means, Edward Ronkowski employed the respondent to represent Laine as well as himself; the respondent entered an appearance on behalf of Jerry Laine and represented Laine during the course of his trial. Edward Ronkowski was present at respondent's pre-trial conferences and interviews with various witnesses concerning the Laine case, which included conferences in the respondent's law office with Jerry Laine, Mildred Laine, and Mary Laine. With the respondent's knowledge, Edward Ronkowski and Jerry Laine created new and false time sheets, which, if true, would have amounted to an alibi for Laine. At a pre-trial conference in the respondent's office, the respondent or Edward Ronkowski, in the presence of the respondent, instructed Mary Laine to discard and forget about her records, as they were going to use other time sheets at the trial in support of Jerry Laine's fabricated alibi that he was not working at Ronk's Truck Stop when Edward Ronkowski purchased the stolen property from Robert Spenner and Timothy Ambers on April 2, 1971. Although Edward Ronkowski actively participated in the questioning of witnesses for the Laine trial and made suggestions with regard

to trial testimony, the respondent made no effort to prevent or rectify such interference.

In light of our above findings under Count II of the amended complaint, we now conclude that the respondent violated Disciplinary Rule 5-107 (B) of the Code of Professional Responsibility for Attorneys at Law.

Under Count III of the complaint, the respondent is charged with suppressing evidence, allowing a witness to be compensated in exchange for favored testimony, assisting a client in unlawful or fraudulent conduct, advancing an unwarranted defense, failing to disclose illegal activity, allowing his professional judgment to be regulated by a third party, and engaging in conduct which is prejudicial to the administration of justice and adversely reflects on his fitness to practice law.

After carefully considering all matters which have been submitted in this cause, and after carefully reviewing the record of proceedings, we now find that the respondent made four visits to the Indiana Youth Center in Plainfield on or about October 24, 1971, October 31, 1971, November 7, 1971, and November 14, 1971, to interview Robert Spenner and Timothy Ambers, who had been convicted, sentenced and incarcerated at the Indiana Youth Center for the burglary of Dolezal's Shopping Center in San Pierre, Indiana, on April 1, 1971, from which they obtained the stolen property they sold to Edward Ronkowski at Ronk's Truck Stop on April 2, 1971.

Robert Spenner and Timothy Ambers were essential State's witnesses in the criminal prosecutions of *State of Indiana* v. *Jerry Laine,* Cause No. 5512, and *State of Indiana* v. *Edward Ronkowski,* Cause No. 5513, both in the 1971 term of the Starke County Circuit Court. The respondent was the attorney of record for the defendants in both of the aforementioned criminal prosecutions during the times he made the four (4) visits to the Indiana Youth Center. The respondent was not, nor ever was, an attorney for Robert Spenner and Timothy Ambers.

The respondent had already taken the depositions of Robert Spenner and Timothy Ambers concerning the above-mentioned criminal prosecutions against Jerry Laine and Edward Ronkowski on October 6, 1971, prior to the respondent's four (4) visits to the Indiana Youth Center. Both deponents had answered all questions freely and testified under oath that Jerry Laine was working during the daytime at Ronk's Truck Stop on April 2, 1971, and was present when they sold the stolen property to Edward Ronkowski. Neither Robert Spenner nor Timothy Ambers attempted to avoid being deposed on right against self-incrimination grounds.

The respondent's October 24, 1971, visit to the Indiana Youth Center was prior to the Laine trial, and all four (4) of the respondent's visits to the Indiana Youth Center were prior to the aforementioned Ronkowski trial. At the respondent's first interview with Robert Spenner and Timothy Ambers at the Indiana Youth Center on October 24, 1971, the respondent indicated to these potential witnesses that they could avoid testifying at the then forthcoming Laine and Ronkowski trials by asserting their rights under the Fifth Amendment. The respondent did not inform them that because of (a) their guilty plea to and conviction for second degree burglary, (b) their testimony given to the grand jury which indicted Laine and Ronkowski, and (c) their testimony freely given at their October 6, 1971, depositions, they probably had no privilege not to testify against Laine or Ronkowski, or that if the State conferred immunity upon them they would be compelled to testify.

The respondent, by his words and conduct at the trial of Jerry Laine on October 27, 1971, encouraged State's witnesses Robert Spenner and Timothy Ambers not to testify against Laine on right against self-incrimination grounds even after they had been granted immunity pursuant to law. Timothy Ambers did, in fact, refuse to testify at the Laine trial on October 27, 1971, on right against self-incrimination grounds, for which he was found in contempt of court and was given a six (6) month sentence. Robert Spenner also attempted to

avoid testifying at the Laine trial on October 27, 1971, on right against self-incrimination grounds, but did testify with reluctance after being informed that he could not avail himself of such a right.

The respondent was accompanied at his third interview with Robert Spenner and Timothy Ambers at the Indiana Youth Center on November 7, 1971, by Edward Ronkowski. The respondent advised and encouraged Edward Ronkowski to offer money to Robert Spenner and Timothy Ambers at their November 7, 1971, visit with them at the Indiana Youth Center, and to thereafter give money to the wife of one of the incarcerated youths. Edward Ronkowski did offer State's witnesses Robert Spenner and Timothy Ambers money during the respondent's and his visit with them at the Indiana Youth Center on November 7, 1971; and sometime after Edward Ronkowski's offer of money to Robert Spenner and Timothy Ambers on November 7, 1971, Robert Spenner's wife received a plain white envelope containing one hundred dollars, which she sent to Robert Spenner and Timothy Ambers at the Indiana Youth Center.

Considering all the evidence which has been presented, we can only infer the respondent's efforts at having Spenner and Ambers stubbornly assert their right to remain silent in the face of contempt and after immunity had been granted, was an attempt on the respondent's part to improperly suppress evidence. Furthermore, the offer of money to these potentially adverse witnesses was an apparent effort to purchase favored testimony.

In light of our above findings under Count III of the amended complaint, we now conclude that the respondent violated Disciplinary Rules 1-102(A) (5) and (6) ; 7-102(A) (2), (3), (7), and (8) ; and 7-109(A) and (C) of the Code of Professional Responsibility for Attorneys at Law.

Under Count IV of the complaint, the respondent is charged with violating a disciplinary rule; engaging in illegal conduct involving moral turpitude; engaging in conduct involving dis-

honesty, fraud, deceit, or misrepresentation; engaging in conduct that is prejudicial to the administration of justice; engaging in conduct that adversely reflects on his fitness to practice law; failing to disclose that which he is required by law to reveal; knowingly using perjured testimony or false evidence; making a false statement of law or fact; participating in the creation or preservation of evidence when he knew, or it was obvious the evidence was false; counselling or assisting his client in conduct that the lawyer knows to be illegal or fraudulent, and knowingly engaging in other illegal conduct or conduct contrary to a Disciplinary Rule.

After considering all matters which have been submitted in this cause and after reviewing the record of proceedings, we now find that on or about February 25, 1972, a house owned by Orville Nichols, the Deputy Prosecutor of Starke County, Indiana, was extensively damaged by fire.

On March 13, 1972, Charles Romenzak signed an Affidavit for Probable Cause for the Prosecuting Attorney of Starke County, Indiana, in connection with the February 25, 1972, burning of the Nichols' house, the substance of which was that:

Stanley Romenzak, the affiant's brother, talked to the affiant about burning the Nichols' house approximately three (3) weeks prior to the February 25, 1972, burning of it. Stanley Romenzak told the affiant that Edward Ronkowski had offered to pay five hundred dollars ($500.00) for the burning of the Nichols' house. On February 25, 1972, after the Nichols' house had been burned, Stanley Romenzak and Donnie Barnett told the affiant that they had set fire by igniting a gasoline mixture. On March 13, 1972, Carol Romenzak signed an Affidavit for Probable Cause for the Prosecuting Attorney of Starke County, Indiana, in connection with the February 25, 1972, burning of the Nichols' house, the substance of which was that: On February 24, 1972, the affiant was in an automobile with Stanley Romenzak, the affiant's brother, and Donnie Barnett, when Stanley Romenzak told the affiant that he and

Donnie Barnett were going to burn a house belonging to Nichols. Stanley Romenzak told the affiant that Edward Ronkowski would pay them five hundred dollars ($500.00) for burning the Nichols' house. On February 24, 1972, the affiant, Stanley Romenzak, and Donnie Barnett drove to Ronk's Truck Stop, and upon arriving at it Stanley Romenzak and Donnie Barnett got out of the automobile and talked with Jerry Laine. Upon getting back into the automobile, they told the affiant that they would burn the Nichols' house later that night. On February 25, 1972, the affiant rode past the burned Nichols' house in an automobile with Stanley Romenzak and Donnie Barnett, both of whom told the affiant they had burned it. On March 20, 1972, Rosalind (Shively) Romenzak signed an Affidavit for Probable Cause for the Prosecuting Attorney of Starke County, Indiana, in connection with the February 25, 1972, burning of the Nichols' house, the substance of which was that: On or about March 2, 1972, the affiant drove to Bloomington, Illinois, with Stanley Romenzak, who told the affiant that he and Donnie Barnett had burned the home of a lawyer in Knox, Indiana, approximately a week before. Stanley Romenzak told the affiant that Edward Ronkowski had asked him to burn the Nichols' house and would pay Stanley Romenzak for doing so.

As a result of the Affidavits for Probable Cause signed by Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak, Stanley Romenzak and Donnie Barnett were charged with Arson in the First Degree, Cause No. 5637 and Cause No. 5636 respectively, in the 1972 term of the Starke Circuit Court, on March 21, 1972, which charged in substance that on February 25, 1972, Stanley Romenzak and Donnie Barnett feloniously, willfully and maliciously burned and destroyed a house owned by Orville Nichols. After Stanley Romenzak had been charged with Arson in the aforementioned cause, Jerry Laine went to the respondent's law office and requested the respondent to represent Stanley Romenzak in the said cause. Jerry Laine gave the respondent

two hundred dollars ($200), for which the respondent agreed to represent Stanley Romenzak through the arraignment stage.

Edward Ronkowski was still a client of the respondent in March or April, 1972, when he accepted the representation of Stanley Romenzak in the above-mentioned cause. All three of the Affidavits for Probable Cause signed by Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak implicated Edward Ronkowski as the principal behind the February 25, 1972, arson committed on the Nichols' house. The Affidavit for Probable Cause signed by Carol Romenzak also implicated Jerry Laine as being involved in the arson.

On or about April 9 or 10, 1972, the respondent told Jerry Laine that he wanted Jerry Laine to bring Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak to his law office for the purpose of discussing with them the affidavits they had made for the Prosecuting Attorney of Starke County in March, 1972, concerning the February 25, 1972, burning of the Nichols' house. On April 10, 1972, Jerry Laine did bring Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak to the respondent's law office. During this April 10, 1972, conference in the respondent's law office, the respondent told Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak that they had to change their March, 1972, affidavits in order to help Stanley Romenzak in his above-mentioned cause. Jerry Laine was in the respondent's law office on April 10, 1972, when the respondent told Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak that they had to change their original March, 1972, affidavits. The respondent knew that the March 13, 1972, affidavit of Carol Romenzak stated that Jerry Laine had made threats of physical violence against Carol Romenzak. Therefore, the respondent knew, or should have known, that one or more of the above-named affiants could have been intimidated by the presence of Jerry Laine in the respondent's law office on April 10, 1972.

The respondent drew up counter-affidavits for Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak

in their presence on April 10, 1972, without consulting or questioning them as to the substance or content of the counter-affidavits. The April 10, 1972, counter-affidavits drawn up by the respondent were basically of the same form as the original March, 1972, affidavits of Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak, except that the respondent interlineated the negative into every material affirmative statement of each affidavit. Therefore, the April 10, 1972, counter-affidavits were wholly contradictory to the original March, 1972, affidavits in all material respects, other than biographical information pertaining to the individual affiants. At no time did the respondent ask Charles Romenzak, Carol Romenzak or Rosalind (Shively) Romenzak whether their original March, 1972, affidavits were true or not, nor did any of these affiants tell the respondent or anyone else that their March, 1972, affidavits were false.

At their meeting with the respondent in his law office on April 10, 1972, at least one of the above-named affiants asked the respondent whether they could get in any trouble for signing two contradictory affidavits. The respondent told them, in essence, that they would not get into any trouble, knowing that their signing of the counter-affidavits would necessarily mean that Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak had perjured themselves on either the March, 1972, or April 10, 1972, affidavits. In Jerry Laine's presence, Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak signed the counter-affidavits drawn up by the respondent. This occurred in the reception area of the respondent's law office, on April 10, 1972. In addition to helping Stanley Romenzak in Cause No. 5637, 1972 term of the Starke County Circuit Court, the respondent in obtaining the April 10, 1972, counter-affidavits from Charles Romenzak, Carol Romenzak and Rosalind (Shively) Romenzak was also obtaining exculpatory evidence for use in possible future criminal prosecutions against Jerry Laine and Edward Ronkowski in connection with the February 25, 1972, arson committed on the house of Orville Nichols.

In light of our findings under Count IV of the amended complaint, we now conclude that the respondent violated Disciplinary Rules 1-102(A) (1), (3), (4), (5) and (6); and 7-102(A) (4), (5), (6), (7) and (8) of the Code of Professional Responsibility for Attorneys at Law.

In his petition for review, the respondent has challenged the findings of fact of the Hearing Officer, which findings, in large measure, correspond to the findings of this Court. The basis of this challenge is that many findings are only sustained through the testimony of Jerry Laine, a convicted perjurer who was dissatisfied with the legal representation of the respondent, and who, again, may be fabricating a story as a vehicle of revenge directed toward the respondent. The respondent further points out that there are certain inconsistencies in the testimony of the witnesses for the Commission, and states that the only logical and coherent explanation of the facts can be found in the testimony of the respondent who unequivocally denied any misconduct.

In reaching our findings, this Court considered all evidence which was submitted and reviewed all of the testimony. Our findings are the product of our analysis of these considerations and the findings submitted by the Hearing Officer. We further note that Jerry Laine testified that he had five and one-half years of formal education; he cannot read or write. After examining Mr. Laine's testimony, we find it extremely difficult to attach the Machiavellian design respondent suggests in his petition for review. Accordingly, these assertions of error directed toward the findings are now denied.

Having found misconduct, it now becomes this Court's duty to determine the appropriate discipline in this case, taking into consideration the nature of the violation, the specific acts of the respondent, this Court's responsibility to preserve the integrity of the Bar of this State; the risk, if any, to which we will subject the public by permitting the respondent to continue in the profession or to be reinstated at some future date; and the deterrent effect the imposition of discipline has on the Bar in general.

*In re Woods, supra; In re Noel,* (1976) 265 Ind. 98, 350 N.E.2d 623; *In re Lee,* (1974) 262 Ind. 439, 317 N.E.2d 444.

Under the above findings of this Court, we have found twenty-nine different violations of the Code of Professional Responsibility. This misconduct includes using perjured testimony, making false statements of fact and law, participating in the creation of false evidence, failing to reveal to the trial tribunal the existence of fraud perpetrated by clients and witnesses, allowing third persons to direct and regulate professional judgment, engaging in conduct prejudicial to the administration of justice, and acquiescing in the payment of witnesses for favored testimony.

It appears to this Court that the respondent has little regard for the requirements of the Code of Professional Responsibility. While an attorney always must be zealous in his representation of individuals, there are limits and the provisions of the Code of Professional Responsibility have been drafted to set forth these limits. The respondent in this case is not a young practitioner, who has inadvertently exceeded the area of permissible conduct; the respondent is an experienced attorney, and his flagrant disregard for provisions of the Code is unjustified, unreasoned, and unmitigated.

With the foregoing considerations in mind, we now conclude that in order to preserve the integrity of the legal profession, and in order to protect the public in general from future conduct as demonstrated in this case, this Court must impose the maximum disciplinary sanction authorized by the Constitution of the State of Indiana. Accordingly, by reason of the misconduct found under Counts I, II, III, and IV of the amended complaint, it is now ordered that the respondent be and he hereby is disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the respondent.

NOTE.—Reported at 362 N.E.2d 128.