**In the Matter of Stephen A. OLIVER.**

No. 784 S 299.

Supreme Court of Indiana.

June 12, 1986.

Ronald E. Elberger, Indianapolis, for respondent.

Sheldon A. Breskow, Executive Secretary, Gregory M. Fudge, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

Respondent Stephen A. Oliver, an attorney admitted to the bar of this Court, has been charged under a complaint alleging that he engaged in conduct which violates the *Code of Professional Responsibility for Attorneys at Law.* In accordance with our procedural rules in disciplinary actions, a hearing officer has conducted a hearing and filed a report to this Court. The Disciplinary Commission has petitioned for review of the officer's findings and both parties have filed briefs.

Respondent stands charged with violation of three separate sections of the Code:

1. Rule 1–102(A)(3)—illegal conduct involving moral turpitude,
2. Rule 1–102(A)(5)—conduct prejudicial to the administration of justice, and
3. Rule 1–102(A)(6)—conduct that adversely reflects on his fitness to practice law.

We find that Oliver's behavior constituted a violation of the second of these and did not constitute a violation of the other sections of the Code. Accordingly, disciplinary sanctions are being imposed.

### Facts

The facts surrounding the conduct alleged in the complaint are not substantially disputed. On November 29, 1982, the Respondent and his brother-in-law went to a local tavern in Martinsville, Indiana, between 5 and 7 p.m. While at the tavern, Oliver consumed alcoholic beverages. Respondent left the tavern in his 1981 Honda and headed toward his residence using a state highway. En route to his home, Respondent failed to negotiate a curve in the roadway and struck a tree. This was a one-car accident and Respondent was the only person injured. Approximately one hour after the accident, the alcohol content of Respondent's blood was measured at .23 per cent.

Three days later, Oliver was charged by information in the Morgan County Court with the offense of operating a vehicle while intoxicated, a Class A misdemeanor.

On December 14, 1982, Oliver pleaded guilty to this charge. The trial judge withheld acceptance of this plea on the condition that Respondent complete fifty hours of community service, attend alcohol education school, contribute $250.00 to charity in lieu of a fine and commit no further offense for a period of one year. Oliver met the terms of this informal probation and it was successfully terminated on January 16, 1984.

### 1. *Conduct Involving Moral Turpitude*

 The hearing officer appointed by this Court, upon her review of the evidence, found that Oliver's conduct did not constitute illegal behavior involving moral turpitude. Since disciplinary matters are original actions, this Court sits as fact-finder. While the hearing officer is in a superior position to judge the evidence put before her, we examine and review all matters which have been submitted in a particular cause. The findings of fact rendered by the hearing officers are the initial starting point for that review. *In re Murray* (1977), 266 Ind. 221, 362 N.E.2d 128. As for the level of proof required, violations need be proven by "clear and convincing evidence." *Matter of Moore* (1983), Ind., 453 N.E.2d 971. Although this standard is frequently described as being intermediary between "preponderance of the evidence" and "beyond a reasonable doubt," this Court described it earlier this year as "akin to that required in criminal trials," one reserved for those actions which are penal in nature. *Orkin Exterminating Co. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1022.

The general definition of moral turpitude, as employed in disciplinary proceedings, was set forth in *Baker et al. v. Miller* (1956), 236 Ind. 20, 24, 138 N.E.2d 145, 147:

> In proceedings of this character moral turpitude has always been a controlling factor in the disciplinary action to be taken by the court where there has been a charged of misconduct by a member of the bar. The problem of defining moral turpitude is not without difficulty. There is certain conduct involving fraud, perjury, theft, embezzlement, and brib-

ery where there is no question but that moral turpitude is involved. On the other hand, because the law does not always coincide exactly with principles of morality there are cases that are crimes that would not necessarily involve moral turpitude. Acts which normally at common law were not considered wrong, do not by reason of statutory enactment making them a crime, add any element of moral turpitude. For example, willfully running a stop light or exceeding the speed limit does not necessarily involve moral turpitude.

> Webster's International Dictionary (2d Edition) defines "turpitude" as: "Inherent baseness or vileness of principle, words, or actions; depravity."

> Black's Law Dictionary (4th Edition) defines "moral turpitude" as: "An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

Because this problem of definition makes it easy to lose track of what Rule 1–102(A)(3) seeks to accomplish, some courts have attempted to describe moral turpitude in terms of the objective of the rule. The Supreme Court of California has adopted a definition which seems cogent:

> The paramount purpose of the "moral turpitude" standard is not to punish practitioners but to protect the public, the courts and the profession against unsuitable practitioners. (See *Hallinan v. Committee of Bar Examiners* (1966) 65 Cal.2d 447, 417–472, 55 Cal.Rptr. 228, 421 P.2d 76; *In re Rothrock* (1940) 16 Cal.2d 449, 454, 106 P.2d 907.) To hold that an act of a practitioner constitutes moral turpitude is to characterize him as unsuitable to practice law. *In re Higbie* [ (1972) ], 6 Cal.3d 562, 570, 99 Cal.Rptr. 865, 869, 493 P.2d 97, 101.

*In re Fahey* (1973), 8 Cal.3d 842, 849, 106 Cal.Rptr. 313, 317, 505 P.2d 1369, 1373.

This formulation is consonant with the ABA Model Rules of Professional Conduct,

which use the term "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness." Rule 8.4. The Indiana State Bar Association has recently recommended that this Court adopt a revised version of the same rule, which provides that it is professional misconduct to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Rule 8.4(b).

Commission of some crimes establishes moral turpitude on its face. These include crimes that necessarily involve an intent to defraud, intentional dishonesty for personal gain, or behavior particularly repugnant to accepted moral standards. Commission of other offenses may or may not involve moral turpitude, and thus conviction of other offenses is not grounds for discipline without additional proof of circumstances surrounding the offense. *Hallinan, supra.*

Acts which this Court has declared to involve moral turpitude have included standing naked in a window masturbating and waving to attract attention (*In re Levinson* (1983), Ind., 444 N.E.2d 1175), and misrepresenting the reasons why a bank failed to honor a check which was issued without sufficient funds and failing to appear in court after receiving a summons, necessitating issuance of a bench warrant (*In re Schaumann* (1983), Ind., 446 N.E.2d 1304). Where the conduct involved driving while intoxicated and another offense, such as possession of marijuana and hashish, this Court has determined that the behavior constituted illegal conduct involving moral turpitude. *Matter of Jones* (1984), Ind., 464 N.E.2d 1281. Considering *Jones* in light of cited precedent, this Court noted that it was not simply possession of marijuana which made the respondent guilty of violating the Code:

> The fact that marijuana was involved in both disciplinary actions does not mean that all issues in such cases are forever decided. Our analysis involves the consideration of Respondent's conduct, in toto, not the rigid application of discipline because a particular allegation is raised. *Id.,* at 1282.

Thus, the respondent's violation in *Jones* was not the result of any one of the acts with which he had been charged, but the result of consideration of all three offenses.

The only other jurisdiction which has considered whether driving while intoxicated is an illegal offense involving moral turpitude has concluded that it is not. *Matter of Walker* (1977), S.D., 254 N.W.2d 452. The only reported cases under which driving while intoxicated, standing alone, has served as a basis for discipline arose in states under whose statutes any conviction for any criminal offense would serve as a basis for discipline. *In re Enright* (1938), 160 Or. 313, 85 P.2d 359, *rev. on other grounds* 239 Or. 82, 396 P.2d 216 (1964) (any misdemeanor or felony conviction a basis for discipline); *Matter of Costigan* (1972), 39 App.Div.2d 961, 333 N.Y.S.2d 984 (suspension required upon any felony conviction).

While cases involving driving while intoxicated as a basis for attorney discipline are sparse, many states have concluded that driving while intoxicated is not an offense involving moral turpitude in the context of statutes or rules authorizing impeachment of witnesses through introduction of evidence showing that the witness has been convicted of a crime involving moral turpitude. *State v. Fournier* (1963), 123 Vt. 439, 193 A.2d 924; *State v. Deer* (1955), Ohio Comm.Pl., 57 O.O. 493, 129 N.E.2d 667; *Fee v. State* (Tenn.Cr.App.1973), 497 S.W.2d 748; *Diamond v. State* (1972), 49 Ala.App. 68, 268 So.2d 850; *Compton v. Jay* (Tex.1965), 389 S.W.2d 639. One state has held that driving while intoxicated is not an offense involving moral turpitude for purposes of alcoholic beverage regulation. *Flowers v. Benton County Beer Board* (1957), 202 Tenn. 56, 302 S.W.2d 335.

In reaching its conclusion, the Vermont Supreme Court emphasized that to involve moral turpitude the conduct "must not only

be socially undesirable which the law has made criminal, but it must, by its nature, be base or depraved." 193 A.2d at 925. Similarly, the Alabama court held that driving while intoxicated "is not the kind of offense which signifies an inherent quality of baseness, vileness, and depravity, denoting moral turpitude." 268 So.2d at 853.

■ We assess Oliver's behavior against this precedent, and we consider the nature of his conduct *in toto.* First, the Respondent is not a multiple offender or someone with a chronic alcohol problem. The findings of fact, not challenged, are that this was an isolated incident. Second, the Respondent has not been convicted of a felony. Indeed, he has not been convicted of a misdemeanor. He was charged with a misdemeanor and readily admitted his guilt. Third, the Respondent has not caused any personal injury or property damage, except to himself.

The judgment of the community upon Oliver's conduct is a part of the determination of moral turpitude, which depends upon the state of public morals and may vary according to time and place, as well as with the degree of public harm produced by the act in question. *In re Fahey, supra; In re Hibgbie, supra.* The trial judge withheld acceptance of Oliver's plea on condition that he perform fifty hours of community service, attend alcohol education school, contribute $250.00 to an appropriate charity, and commit no further offense for one year. These penalties lie within the discretion and authority of the trial judge. Ind.Code § 35–38–2–2 (Burns 1985 Repl.). After Oliver successfully fulfilled these requirements, the trial judge dismissed the case. The prosecutor apparently concluded that the penal interests of the State had been met and concurred in this dismissal; otherwise the matter would have been set for trial. The trial judge was sufficiently confident that Oliver would not be a further danger to the community that he chose to permit him to drive on a restricted license, as authorized by the legislature. Ind.Code § 9–4–1–54 (Burns 1980 Repl.), now Ind.Code § 9–11–3–2.

Standing alone, Oliver's act of driving while intoxicated, without a prior history of alcohol offenses and without any damage done to anyone other than himself, does not constitute a violation of Rule 1–102(A)(3).

## II. *Conduct Prejudicial to the Administration of Justice*

■ In assessing the allegation that Oliver violated Rule 1–102(A)(5), conduct prejudicial to the administration of justice, certain other facts are important.

At the time of the event which gave rise to this proceeding, Respondent was serving as special prosecutor in a matter pending in the Hendricks Circuit Court, *State v. Ray Daugherty.* Sheriff Daugherty was charged with official misconduct for beating three prisoners in his custody. He was found guilty by a jury, but the trial court granted a motion to correct errors and he was tried again. The Court of Appeals upheld his conviction subsequent to the second trial. *Daugherty v. State* (1984), Ind. App., 466 N.E.2d. 46.

While the second trial was pending, Oliver filed a petition asking that he be relieved of this duty, citing the "substantial likelihood that he will incur great difficulty in receiving payment for any further services rendered in this cause." Oliver's petition had not been acted upon by the trial court at the time of his accident. After being charged with driving while intoxicated, Oliver filed another motion seeking to withdraw for "health reasons." The time required for his recovery apparently made it possible that he would be unable to serve at trial without requesting a continuance.

The Hendricks Circuit Court granted Respondent's motion to withdraw and a new prosecutor was appointed. The trial proceeded to take place as scheduled without any apparent damage to the State's ability to prosecute its case. The hearing officer concluded on the basis of this testimony that Oliver's conduct had not been prejudicial to the administration of justice.

We conclude, however, that the prejudice to the administration of justice had occurred before Oliver's motion to withdraw

was granted. The duty of judges and prosecutors to conform their behavior to the law does not arise solely out of their status as attorneys. As officers charged with administration of the law, their own behavior has the capacity to bolster or damage public esteem for the system different than that of attorneys otherwise in practice. Our *Code of Professional Responsibility* makes it clear that attorneys who serve as prosecutors have additional ethical responsibilities:

> The responsibility of a public prosecutor differs from that of the usual advocate. This special duty exists because: (1) the prosecutor represents the sovereign and therefore should use restraint in the discretionary exercise of governmental powers, such as in the selection of cases to prosecute....

*Code of Professional Responsibility*, Ethical Consideration 7–13. Where those whose job it is to enforce the law break it instead, the public rightfully questions whether the system itself is worthy of respect. The observation of the Nebraska Supreme Court with respect to judges reflects on Oliver by virtue of his service as a prosecutor:

> Conduct which falls short of reaffirming one's fitness for the high responsibility of judicial office constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute. See *Geiler v. Commission on Judicial Qualifications*, 10 Cal.3d 270, 515 P.2d 1, 110 Cal.Rptr. 201 (1973), *cert. denied* 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974). It includes conduct which would justify a reasonable man in believing that a result achieved by the judge was achieved because of his position and prestige *In re Foster*, 271 Md. 449, 318 A.2d 523 (1974), and conduct which would appear to an objective observer to be not only unjudicial but prejudicial to public esteem for the judicial office. *In re Edens*, 290 N.C. 299, 226 S.E.2d 5 (1976).

*In re Kneifl* (1984), 217 Neb. 472, 351 N.W.2d 693, 695–96.

It was not necessary to demonstrate harm in the prosecution of the case in which Oliver was serving as prosecutor. The harm done was to public esteem for those charged with enforcing the law. Accordingly, we find that Oliver's commission of the offense of driving while intoxicated constituted conduct prejudicial to the administration of justice.

### III. *Conduct Which Adversely Reflects on Fitness to Practice Law*

█ Finally we come to determine whether Oliver's conduct violated Rule 1–102(A)(6), conduct adversely reflecting on his fitness to practice law.

In deciding that question, this Court exercises its duty to assure the public that those who hold licenses to provide service can be trusted to do so in a responsible and competent way. We consider whether an attorney can be trusted to keep his client's secrets, give effective legal advice, fulfill his obligation to the courts, and so on. The question is whether there is a nexus between Oliver's act of misconduct and his fitness to practice law.

The hearing officer heard considerable testimony from members of the bar and bench from several counties to the effect that the isolated incident involving Oliver had not, as a matter of fact, adversely affected his capacity to practice law in the community. The testimony revealed that since this was a first offense, and because Oliver had no history of alcoholic problems, his reputation in the community was such that it was unlikely that the event would affect his ability to practice law.

There was testimony that Oliver's courtroom decorum, demeanor, and behavior had always been professional and above reproach. Several respected trial judges testified that Oliver can be safely recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence. This testimony was not admitted for the purpose of proving Oliver's good character; it was admissible on the ultimate question which was before the hear-

ing officer and this Court. *Code of Judicial Conduct*, Cannon 2(B); *McCullough v. Allen* (1983), Ind.App., 449 N.E.2d 1168. Having heard this testimony, the hearing officer found that Oliver "was and remains competent to practice law."

Since the evidence demonstrated that Oliver's sole act did not affect his practice or lead to any reasonable question about his suitability as a practitioner, we conclude that the hearing officer was correct that it does not constitute a violation of Rule 1–102(A)(6).

### Sanction

■ Having determined that Respondent violated Rule 1–102(A)(5) of the Code of Professional Responsibility, we must now determine an appropriate sanction to be assessed under the facts of this case. Respondent's conduct of driving while intoxicated is one which had the potential for serious damage to life and limb. However, there is no evidence to suggest that Respondent has engaged in similar conduct in the past or that future acts of misconduct are likely to occur. The Respondent has accepted sole responsibility for his misconduct and is generally remorseful.

In view of the above, this Court now finds that, upon consideration of the nature of the violation, the specific acts of the Respondent, and this Court's responsibility to provide for the highest standard among those charged with the administration of justice, that the Respondent should be given a public reprimand.

IT IS THEREFORE ORDERED that the Respondent, Stephen A. Oliver, by reason of the misconduct found under the complaint filed in this cause is hereby reprimanded and admonished.

Costs of this proceeding are assessed against the Respondent.

All Justices concur on Issues II and III.

DeBRULER, SHEPARD, and DICKSON, JJ., concur with respect to Issue I.

PIVARNIK, J., dissents as to Issue I, with separate opinion, in which GIVAN, C.J., joins.

PIVARNIK, Justice, concurring and dissenting.

I concur with the majority in its disposition of Issues 2 and 3, but dissent as to Issue 1 wherein it was their conclusion that Respondent's conduct here did not violate Rule 1–102(A)(3) since it did not involve illegal conduct involving moral turpitude. I cannot join the majority in its conclusions that driving an automobile on a public highway while under the influence of intoxicating liquors is a crime lacking in a demonstration of moral turpitude subjecting the violator to disciplinary action by this Court. Failure to recognize the gravity and oftentimes tragic results of this conduct places this Court in remission of its duties and responsibilities to the profession and to the citizens of this State.

The facts are not in dispute here. The Respondent admits his guilt at this point and did so in the Morgan County Court by entering a plea of guilty. There is, therefore, a proof of the violation by "clear and convincing evidence" and the Hearing Officer found this to be so. The only questions remaining before us are whether the conduct constitutes a violation of any of our rules and what, if any, discipline is warranted. Any findings by the Hearing Officer in this latter regard are merely suggestions and recommendations that do not bind us. *In Re: Jones* (1984), Ind. 464 N.E.2d 1281, *reh. denied; In re: Crumpacker* (1978) 269 Ind. 630, 383 N.E.2d 36, *cert. denied* 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406; *In re: Murray* (1977) 266 Ind. 221, 362 N.E.2d 128; *In re: Pawlowski* (1959) 240 Ind. 412, 165 N.E.2d 595, *reh. denied.*

I agree with the definition of moral turpitude as the majority has very clearly defined it. Let us then examine the Respondent's violation here in view of that definition. Respondent drove a motor vehicle on a State highway in a state of intoxication that indicated a concentration of alcohol in his system an hour after the accident to be

that of .23. This is a very high concentration of alcohol that severely impaired his ability to safely and effectively operate the automobile. This was demonstrated by the fact that he did, in fact, fail to negotiate a turn and left the roadway, striking a tree. This result was not only predictable but one that happens all too often in our society. It is not a matter of speculation that driving while under the influence of intoxicating liquors, more commonly referred to in our society "drunken driving", is one of the most serious problems in our society today that accounts for countless numbers of injuries, deaths, and property damage. The gravity of this problem is common knowledge, to be found in the daily records of police files, court records, and on the pages of our daily newspapers. Though I have no actual numbers before me, statistical research indicates more people suffer loss of life, limb and/or property damage from drivers under the influence of alcohol than from those who commit purposeful, serious crimes, such as murder, robbery, rape, and the other well known violent acts readily described as involving moral turpitude. It is therefore unrealistic for this Court to say that a member of the Bar who commits this act did not violate Rule 1–102(A)(3).

It is the privilege of this Respondent to practice law and be a member of the Bar, that is under consideration in a cause such as this. The privilege is granted by the State and it is the duty and responsibility of this Court to decide when that privilege has been abused. We cannot ignore the fact that this privilege is extended and this action based on Respondent's status as a trained, experienced, and professional lawyer. He well knew that driving a vehicle while in a state of intoxication was a violation of the criminal law. Furthermore, he was familiar with the potential for tragic results and, more importantly, was fully familiar, through his daily practice, that these tragic results do occur from conduct such as this. I have no doubt but that the judgment of the community upon Oliver's conduct referred to by the majority would be that the crime he committed involved moral turpitude.

I fail to find the comfort the majority does in the fact Respondent apparently did not receive a conviction. The Legislature has denominated driving under the influence of alcohol a criminal act: namely, a class A misdemeanor which involves a range of penalties including a suspension of driving privileges of the violator. It is true, Respondent's charge was handled in an unusual way by the court and the prosecution. Respondent entered a plea of guilty but the trial judge withheld acceptance of that plea on condition that he perform fifty (50) hours of community service, attend alcohol education school, contribute $250.00 to an appropriate charity and commit no further offense for one year. Finding that Oliver had met all of these requirements, the trial judge dismissed the cause after one year. The majority finds this disposition to be within the discretion and authority of the trial judge. I do not. Ind. Code § 35–38–1 and 2 (Burns Repl.1985) authorizes a court to place a person on probation and sets out the terms of probation the judge can use. These sections contemplate that the judge first find the person guilty of a crime and then sentence him accordingly. There is no authority for a judge to "withhold acceptance of a guilty plea" or in any manner fail to find him guilty of the crime and then impose penalties or set conditions of probation. The judgment also fails to refer to disposition of fine and costs as provided for in Ind. Code § 35–50 et. seq. (Burns Repl.1985). The trial judge further permitted Respondent to drive on a restricted license pursuant to Ind. Code § 9–4–1–54 and § 9–11–3–2 (Burns Repl.1980). This would not have been required had the defendant not been convicted of the violation and yet all that appears is that no guilty plea was accepted, no judgment of conviction was entered, and the cause was dismissed without objection from the State a year later. Although this unusual disposition is difficult to define, we are not faced with a situation where the guilt of the Respondent is in question. He readily entered a plea of

guilty in the trial court, accepted the punishment imposed by the trial judge and does not deny that he committed this violation. Hence the fact that Respondent did not receive a proper "conviction" is not significant to our determination here.

I do consider the sanction imposed by the majority to be appropriate. This is an isolated incident, there is no evidence to suggest Respondent has engaged in similar conduct in the past and Respondent's conduct during this procedure has indicated that future acts of similar misconduct are unlikely to occur since he has accepted sole responsibility and is generally remorseful. I therefore find that a public reprimand is an appropriate sanction.

GIVAN, C.J., concurs.