In the Matter of Timothy M. SEAT.

No. 80S00–9003–DI–182.

Supreme Court of Indiana.

March 16, 1992.

William F. Conour, Indianapolis, for respondent.

Mark A. Jones, Atty., Indiana Supreme Court, Disciplinary Com'n, Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

The Respondent, Timothy M. Seat, has been charged with engaging in conduct in violation of the *Rules of Professional Conduct*, namely Rules 8.4(b) and 8.4(d). A Hearing Officer appointed pursuant to Admission and Discipline Rule 23 has submitted his findings of fact and conclusions of law. The Respondent has petitioned for review; he does not dispute the findings but contends that they do not support the conclusion reached by the Hearing Officer.

There being no other challenge, we accept and adopt the Hearing Officer's findings of fact. Accordingly, we find that the Respondent is a licensed attorney in the state of Indiana who, at the time in question, was the chief deputy prosecuting attorney of Tipton County.

In the evening on December 23, 1987, at approximately 11:19 p.m., the Respondent was driving northbound on U.S. Highway 31 in Howard County, Indiana. He was stopped by an off duty state police trooper because he had been weaving in and out of the traffic lane, without having his tail lights on and with intermittent headlights. As he approached the Respondent, the officer noticed a strong odor of alcohol and that Respondent was in a stuporous state with red eyes and flushed face. When asked for his driver's license, the Respondent first produced his VISA charge card, then his gold badge identifying him as a deputy prosecutor, before producing his license.

The officer sought assistance from the Kokomo Police Department due to the fact that he was off duty and traveling with his wife. As the second officer was arriving at the scene, the Respondent pulled his car back onto the roadway and proceeded in the same direction he had been traveling. Once again the officers stopped him, turned off his car and removed the keys. The Kokomo police officer also noted that the Respondent could not hold his head still, had very red, bloodshot eyes, appeared not to be able to focus on anything, had slurred speech and walked very unsteadily. He was asked to perform some field sobriety tests to which he agreed but could not perform. Papers found in Respondent's property indicated that he was a diabetic. The officer questioned him whether he had taken his medication to which he responded that he had done so and that he was not sick at the time.

The Respondent was taken to the Kokomo Police Department where he was given the breath test for intoxication. The results showed that at approximately 12:36 a.m. Respondent's blood alcohol level was .19% BAC. He was arrested for operating a motor vehicle while intoxicated.

As to the night of December 23, 1987, the Respondent last remembers having two beers and a hot dog early and has no other memory until his processing at the Kokomo police department.

On January 4, 1988, the Respondent was charged in the Howard Superior Court with

Operating a Motor Vehicle While Intoxicated, a Class A Misdemeanor. He resigned from his position as chief deputy prosecutor for Tipton County on January 11, 1988. The charge was dismissed on June 23, 1989, pursuant to Indiana Rule of Criminal Procedure 4(C).

At the time of his arrest, the Respondent was an insulin-dependent diabetic, having been so diagnosed in 1979, at the age of nineteen. Prior to this occurrence, he was being treated by his father, a physician with a family practice, and had been advised not to drink alcohol at all, but in no event more than two drinks. The Respondent had begun gaining weight after the death of his mother in March 1987 and had doubled his insulin dosage.

After his arrest, the Respondent was seen by Dr. Paul Boyce, a physician specializing in internal medicine with a sub-specialty in diabetes. On January 4, 1988, the Respondent was hospitalized pursuant to Boyce's recommendation, and was released on January 10, 1988. Based upon observations and tests performed during the hospitalization, Boyce determined that the Respondent had repeated episodes of hypoglycemia, while hospitalized, between the hours of 9:00 p.m. and 6:00 a.m., and that the amount of insulin Respondent reported taking around December 23, 1987, was approximately twice the amount that he should have been taking. Based upon the facts related by the officers and tests performed upon Respondent in the hospital, Dr. Boyce opined that there was a high degree of probability that the Respondent was hypoglycemic on the night of December 23, 1987, but that only blood sugar level testing conducted at the time would produce conclusive diagnosis.

The Hearing Officer further concluded that the Respondent did not display the classic signs of hypoglycemia but, rather, displayed the central nervous system or cerebral symptoms which were not discernible to the Respondent or others. The latter symptoms include amnesia, confusion, belligerence, disorientation, dullness and stupor. Alcohol can accentuate the effects of hypoglycemia. The Hearing Officer found that on the night in question the Respondent was suffering an episode of severe hypoglycemia accentuated by alcohol which helped to deprive him of the ability to make free, voluntary and willful choices and decisions.

However, neither diabetes nor hypoglycemia affects one's blood alcohol content as measured by an intoxilyzer.

Respondent contends that, because of his hypoglycemia, he did not voluntarily and of his own free will consume alcohol to the point of intoxication and then operate a motor vehicle upon the public highways.

We are not persuaded. Respondent was aware that he was an insulin dependent diabetic who should not consume alcohol. The speed and level of the intoxicating effects of alcohol vary depending on numerous individual factors, of which medical condition is but one. Intoxication to the point of not being cognizant of how much alcohol one is consuming or that one is not capable of operating a motor vehicle is not restricted to hypoglycemics. Respondent's hypoglycemia may have quickened and intensified the effects of intoxication, but it did not cause the initial ingestion of alcohol which lead to this condition. Given Respondent's awareness of the serious effects of alcohol on a diabetic, we find that Respondent's initial consumption of alcohol which resulted in his intoxication was voluntary. The intoxication was simply the natural consequence of a person with Respondent's condition consuming alcohol. As such, his intoxication was voluntary and cannot serve as a defense to professional misconduct. By way of analogy, we also note that voluntary intoxication is not a defense to a crime which, as the offense of "operating a motor vehicle while intoxicated," does not require a specific intent. See IC 35-41-3-5.

Having concluded that the Respondent engaged in a criminal act we must next determine (1) if this act reflects adversely on his honesty, trustworthiness or fitness as a lawyer in violation of Prof.Cond.R. 8.4(b); or (2) whether, by such act, the Respondent engaged in conduct that is

prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d).

The record before us indicates that the Respondent was arrested one time for driving intoxicated. The Hearing Officer specifically found that the Respondent is not and has never been alcohol dependent nor does he have a history of alcohol related offenses. He voluntarily resigned from his position as deputy prosecutor. The record contains little else which can enlighten us as to whether and how Respondent's criminal act affected his fitness as a lawyer. In light of this, we conclude that misconduct under Prof.Cond.R. 8.4(b) has not been established.

At the time the Respondent engaged in the criminal conduct he was serving as chief deputy prosecutor. In the case of *In re Oliver* (1986), Ind., 493 N.E.2d 1237, this Court scrutinized similar conduct charged under D.R. 1–102(A)(6) of the *Code of Professional Responsibility* (thereafter superseded by the *Rules of Professional Conduct*) and held that an attorney serving as prosecutor who commits the offense of Driving While Intoxicated engages in conduct prejudicial to the administration of justice. See also *In re Musser* (1988), Ind., 517 N.E.2d 395; *In re Petit* (1988), Ind., 517 N.E.2d 396. The duty of prosecutors to conform their behavior to the law does not arise solely out of their status as attorneys. As officers charged with administration of the law, their own behavior has the capacity to bolster or damage public esteem for the system. Where those whose job it is to enforce the law break it instead, the public rightfully questions whether the system itself is worthy of respect. The harm done is to the public esteem for those charged with enforcing the law. *In re Oliver, supra; In re Roche, Jr.* (1989), Ind., 540 N.E.2d 36. We, thus, conclude that Respondent's conduct is prejudicial to the administration of justice and violates Prof.Cond.R. 8.4(d).

In assessing the appropriate sanction for this misconduct, we are mindful that this is an isolated incident, that Respondent voluntarily resigned from his prosecutorial position and that repeated misconduct of this nature is highly unlikely. Under such circumstances, we find that a public reprimand adequately censures the Respondent. Accordingly, Timothy Seat is hereby reprimanded and admonished for the misconduct set out above.

Costs of this proceeding are assessed against the Respondent.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents and would impose a suspension for thirty days.