**The STATE of Ohio**

v.

**GATIEN.**

Hamilton County Municipal Court.

Nos. 96TRC54332A, 96TRC54332B, 96TRC54332C.

Decided July 23, 1997.

*Michael J. Harmon,* Assistant City Prosecutor, for plaintiff.

*Joseph L. Emmrich,* for defendant.

---

ELIZABETH B. MATTINGLY, Judge.

This matter is on for decision following the trial of defendant Christopher Gatien on charges of driving under the influence of alcohol, no driver's license, and weaving. By agreement of the parties, the deposition of Dr. Timothy Williams, a physician specializing in diabetes endocrinology and metabolism, has been submitted as expert testimony.

On November 15, 1996 at approximately 10:00 p.m., Officers Swingley and Bedel were on routine patrol on Calhoun Street in the Clifton section of Cincinnati and observed defendant driving erratically in traffic. They both saw defendant switching lanes without a turn signal, going fast, then abruptly slowing, stopping, and weaving in traffic. The officers followed defendant for two or three blocks and determined that defendant did not have a valid driver's license to drive.

The officers stopped the vehicle to investigate. Defendant was unable to produce a driver's license when requested to do so by police. Both officers smelled the odor of alcohol and observed defendant's bloodshot eyes. Officer Bedel asked defendant whether he had been drinking. Defendant shrugged and said, "Too much." The officers then asked defendant to do some field sobriety tests. He did poorly on the tests, swaggered, stumbled, and appeared hesitant in his recitation of the alphabet. Defendant was then arrested on the charges stated previously.

The officers took Gatien to the police station and asked him to blow into the Breathalyzer. He blew into the machine for a second and then stopped, talking between each of his two or three attempts to blow into the machine. Defendant expressed surprise that he was out of breath, since he was a runner. The machine recorded that it had a deficient sample, but was able to detect the presence of alcohol and determine that there were no acetones in defendant's breath.

Officers at the station observed that defendant had an odor of alcohol, bloodshot eyes, and mood swings. Defendant told police that he had a bad chest cold for which he was taking medicine and that he was diabetic. While still at the district, he banged his head on the table and spat on the table.

Defendant at the station stated that earlier in the evening, about 7:30 p.m., he had eaten fifteen pizza rolls and French fries. At the same time, he had taken four units of Humilin, a type of insulin. On the date in question, he had gone to sleep at 4:00 a.m. and awakened at 2:00 p.m., and then went over to watch television at a friend's house. He was driving back from the friend's house when stopped by police.

Defendant is a diabetic; he was diagnosed with this condition in August 1996 and first saw a diabetes specialist, Dr. Timothy Williams, in September 1996.

Dr. Williams stated that he is treating defendant for Type One or insulin-dependent diabetes mellitus. This disease causes the body to quit making insulin, and life and death depends on injecting insulin to maintain reasonably normal glucose levels. Since no acetone was detected in defendant's breath

sample, he could not have been suffering on the evening in question from ketoacidosis, a result of high blood sugar.

The opposite condition, hypoglycemia, or low blood sugar, causes impairment of consciousness and the sensorium. More specifically, symptoms of hypoglycemia include various degrees of impaired mental function, from slight confusion and slight apprehension to total lack of consciousness, or almost anything in between. Dr. Williams further stated that there is no reason that hypoglycemia should cause redness in the eyes.

Dr. Williams described the effect of a small amount of alcoholic beverage on a person with diabetes: As the body metabolizes alcohol, or gets rid of alcohol, it produces a substance that impairs the body's ability to respond to low blood sugar.

As to defendant's specific situation on November 15, 1996, Dr. Williams noted that defendant's recommended dosage of insulin each evening was three units of fast-acting insulin before dinner and three units of slow-acting insulin to be taken at 10:00 p.m. Patients are, however, taught to practice self-adjustment. Assuming defendant ate the described pizza rolls and French fries, the slightly higher dose of insulin defendant took with dinner, four units, may have been warranted.

Further, if defendant skipped the prescribed 10:00 p.m. dose of slow-acting insulin, under normal circumstances, missing that dose would have only a small effect. Dr. Williams also opined that having one drink would have no profound effect right away in a person with diabetes. Hours later, when the body metabolizes the alcohol, it might impair the ability of the body to respond to low blood sugar. For that reason, Dr. Williams recommends to his patients that they take "no excess alcohol." He does not believe that one glass of wine or one beer cannot safely be ingested by a diabetic such as defendant.

In addition, assuming defendant was ill with a cold on the evening of November 15, 1996, the cold itself could tend to antagonize the effect of the insulin.

Most significant for decision of this matter, however, is Dr. Williams's testimony that persons with diabetes become hypoglycemic at times that are not necessarily predictable or logical. An episode of low blood sugar or hypoglycemia could very definitely adversely affect a diabetic's ability to drive a car. Dr. Williams personally has treated ten patients actually stopped by police because of driving under the influence when they actually have had hypoglycemia.

He noted that defendant had only recently been diagnosed with diabetes and was early in his treatment. He further stated that patients in early treatment often make mistakes in judgment, since diabetes is a difficult disease to properly treat and regulate.

Dr. Williams was finally asked whether all the behaviors observed by the officers on November 15, 1996, to wit, swaying, stumbling on the walking test, lack of sureness on turning, missing finger-to-nose test, trouble with the alphabet, and slurred speech, could be attributable to hypoglycemia. He replied that it was "certainly possible." He subsequently testified that, to a reasonable degree of medical certainty, these symptoms, with the exception of the bloodshot eyes, could be caused by hypoglycemia rather than by having ingested too much alcohol.

Few cases in the legal literature have addressed the defense raised herein by defendant Gatien, to wit, that he was driving under the influence of low blood sugar, not alcohol. See, for example, *People v. Smith*, (1989) 182 Ill.App.3d 1062, 131 Ill.Dec. 712, 538 N.E.2d 1268. Certainly, a diabetic who knows that, in his particular medical situation, the ingestion of small amounts of alcohol can trigger symptoms of intoxication does not have a viable defense to a drunk driving charge. A diabetic who chooses to drink in excess risks impairment of his driving ability and is as great a menace on the highways as if he had been drunk. *Matter of Seat* (Ind.1992), 588 N.E.2d 1262; *McDonnell v. Dept. of Motor Vehicles* (1975), 45 Cal.App.3d 653, 119 Cal.Rptr. 804.

However, in this case, the only medical testimony before the court is that all of the symptoms normally associated with driving under the influence of alcohol exhibited by defendant Gatien and observed by the officers, including his admission that he drank "too much" and his erratic driving, can be caused by hypoglycemia, with the exception of bloodshot eyes and the odor of alcohol. Beyond the mere statement of the presence of alcohol, the officers who testified in this matter did not characterize the odor in any way. Defendant Gatien, on the evening of his arrest, stated that in the interview at the police station he had not been drinking. Moreover, the court credits defendant's testimony at trial that he was suffering from a cold on the date in question, which could well account for his bloodshot eyes.

Taking these factors together, the question for this court is whether the two symptoms not arguably caused by hypoglycemia, bloodshot eyes and an unspecified odor of alcohol, constitute proof beyond a reasonable doubt that defendant Gatien is guilty of driving under the influence of alcohol in violation of R.C. 4511.19(A). In this regard, the court notes that defendant Gatien had received specific treatment for his diabetes only six to ten weeks prior to the incident in question here.

## JUDGMENT ENTRY

The court finds that particularly in view of defendant's very recent diagnosis as a diabetic, reasonable doubt remains, and the state has failed to prove its case.

Therefore, the court finds defendant Gatien not guilty of the charge of driving under the influence of alcohol.

As to the remaining charges of driving without a license and weaving, the court finds the defendant guilty as charged.

*Judgment accordingly.*